# COOS,

## TIBBETTS v. FLANDERS.

A party who has entered into a parol contract which he cannot be compelled to perform, because the contract is within the statute of frauds, and is not in writing, is not obliged, in behalf of a third person, not interested in the contract, to take that objection, nor can such third person take advantage of the statute, on that account, to avoid a collateral liability to him.

An agreement with a debtor, to pay his debt to a third person, is not within the statute.

Upon a pledge, or transfer of property, no formal delivery is necessary. It is sufficient that the property is present, and within the control of the pledgee or vendee, and that he exercises any act of possession.

If, after possession is taken, the property is left upon the premises of a third person, that is a sufficient continuance of the possession, as against a wrong-doer.

A party cannot cross-examine a witness respecting an immaterial matter, and then contradict his testimony in that particular.

If a date, stated by a witness in his deposition, would, if correct, show that his testimony did not relate to the matter on trial, that is not sufficient to exclude the deposition from the consideration of the jury, provided other parts of his testimony tend to show that his evidence relates to the suit, and that the date is, therefore, a mistake, either of the witness or of the magistrate who took the deposition.

The testimony of a witness that he understands that a person is dead, is not sufficient evidence of his death.

A witness is not competent to testify to what a deceased witness stated on a formal trial of the case, unless he can state the substance of the whole of his evidence.

TROVER, for a birch table. Appeal from a justice of

the peace, tried in the court of common pleas, February term, 1846.

The evidence tended to prove that William Balch was the original owner of the table, and also of six chairs, which he sold to Daniel Aldrich in the fall of 1842. The table was left at the same time in the shed attached to the defendant's store, which was used by him as a sort of store-room for ploughs and other articles which he kept for sale, and Balch authorized the defendant to sell the table or exchange it for grain. He also authorized Aldrich, who had been engaged in selling furniture for him, to make sale of the table, if he could, and told the defendant that Aldrich was also authorized to sell it.

In April, 1843, Balch was owing Richard Tibbetts the balance of a note, amounting to $7, which said Richard pressed Balch to pay or secure, but not having the money Balch offered to turn out this table and another, which was with this, and also the six chairs previously sold to Aldrich, to which Aldrich assented.

The plaintiff's evidence tended further to show that said Richard declined taking the furniture, and that the plaintiff, Joseph Y. Tibbetts (son of Richard), being present, agreed to take the property, and to guarantee the payment of the note by the first of June, then next, if Balch failed to pay it, and in that case the furniture was to be his, and he might sell or dispose of it as he pleased.

The plaintiff, Balch, Richard Tibbetts and Aldrich were then together in the shed, but the defendant was not present, and it did not appear that he knew what was then and there said and done. The plaintiff moved one of the tables a little nearer to the other, but did nothing else with them, and they all went away without saying any thing to the defendant.

In June, Aldrich carried the tables into the defendant's store-chamber, and afterwards, in the same month, came again, and brought the table in question down from the

chamber. The defendant asked him what he was going to do with it, and he replied that he was going to sell it or convey it home. The defendant said he had heard that the plaintiff claimed it as having been turned out to him by Balch, but Aldrich told him it was not so, but that Balch turned it out to Richard Tibbetts, and not to the plaintiff, and that Richard had authorized him to dispose of it. The defendant then bought it of Aldrich, and paid him part in goods, and for the balance gave him credit on book, and in December, 1843, the defendant sold the table to one Tirrell.

The note to Richard Tibbetts remaining unpaid, the plaintiff, in January, 1844, paid it, and then demanded the tables of the defendant, who delivered him one, and told him that he had bought the other of Aldrich, and had sold it again, and could not deliver it.

The defendant contended that upon this evidence the action could not be maintained. (1) Because the plaintiff's verbal promise to pay the debt of Balch was not such a legal and binding contract as vested any such rights in him; (2) because the "turning out" of the table, if any thing, was a pledge and not a mortgage, and that the plaintiff retained no such possession as would make the pledge available in this form of action, as the defendant always had the possession as the agent of Balch, and sold it without notice. But the court ruled otherwise. Daniel Aldrich was called by the defendant, and testified to the leaving of the property by Balch in 1842, and the authority given to the defendant and to himself to sell, and that he sold the table to the defendant, as above stated, and the direct examination there stopped. Upon cross-examination Aldrich testified that the tables were "turned out" to Richard, and not to the plaintiff, and that Richard authorized him to sell the table, and he did so, to the defendant; and in answer to cross-interrogatories, the witness said that he did not recollect of telling the defendant,

when he sold the table to him, that the plaintiff had taken the witness's chairs, and he had a right to take his table, but that he might or might not have so said; that he never told another person named that if the plaintiff recovered he should not get much or any fees; that he did not recollect of telling E. P. Tibbetts that he never denied that the table was turned out to the plaintiff; that he never told P. F. Heald or James Keyzar that it was turned out to the plaintiff.

The plaintiff then produced the persons above named, to contradict these answers; to which the defendant objected, on the ground that they were not material, and the answers must be taken as final. Also, because the subject matter was altogether different from any thing to which his testimony was directed by the plaintiff. But the court admitted the plaintiff to proceed.

The defendant also objected to the admission of E. P. Tibbetts' deposition, because the time to which he referred the consideration respecting which he testified was in 1834, and could have no reference to this case. But the court admitted it, and instructed the jury that if they found the time (1834) was a mistake of the scribe, for 1844, the deposition might be considered by them, and not otherwise.

The plaintiff called the justice before whom the case was first tried, to prove what one Jeremiah Lovering testified to before him—the witness, as it was alleged, having since deceased. The justice testified that he had understood Lovering was dead, and that he took notes of his testimony, but that his recollection of it was very indistinct; that he could not state it without reference to his notes, nor could he swear, from his recollection, that he had written the whole of his testimony down, nor could he recollect whether he had said any thing which was not written down, nor could he recollect now what he did say, except that he found it written on his minutes. To the

admission of this witness the defendant objected, "but the court admitted him to testify, at the plaintiff's risk."

The jury returned a verdict for the plaintiff, and the defendant moved for a new trial.

*Burns,* for the defendant. 1. This action of trover cannot be maintained, because the contract was not binding, so as to vest in the plaintiff any such legal rights. 13 Pick. 1; 12 Mass. 514; 4 Pick. 179.

2. This was neither a pledge nor a mortgage, and no such possession was retained as to enable the plaintiff to hold it against the defendant. 2 Saund. 47 a to 47 k; 5 Pick. 59; 2 Pick. 610; Story on Bail. 198; 4 Kent's Com. 138 (3d ed.)

3. The plaintiff, having cross-examined the defendant's witness, must take his answers to matters irrelevant, and cannot contradict him. The question respecting the witness's declaration as to fees was irrelevant, and collateral. 8 Greenl. 42; 5 Wend. 301; 16 Pick. 157.

4. The question whether there was a mistake made in the deposition of E. P. Tibbetts was improperly submitted to the jury.

5. The testimony of the magistrate was not proper to go to the jury. There was no sufficient evidence that Lovering was dead. 2 C. & H. Phil. Ev. 613, n. 459. The recollection of the magistrate respecting the testimony was too imperfect.

*Fletcher* (with whom was *Bellows*), for the plaintiff. The plaintiff was a guarantor by parol, and was not bound to set up the statute. 18 Pick. 369; Chit. on Con. 307, n. citing 6 Dana 194; 23 Pick. 268; 8 Pick. 282; 2 Bing. 437. The contract was on a sufficient consideration.

But the contract was not within the statute. There was a new consideration. 10 N. H. Rep. 32, *Allen* v. *Thompson;* 14 Me. 138; 1 B. & Adolph. 603; 3 Burr. 1886; 4 Bing. 264.

Tibbetts *v.* Flanders.

A promise to the debtor himself to pay the debt, is not within the statute. 11 Ad. & El. 438; Arch. N. P. 48; Pitman on Prin. and Surety 23, cites 6 M. & S. 204.

The plaintiff had a good title, subject to be defeated by the payment of the debt by Balch.

Aldrich had no title to the table, and the rule *caveat emptor* applies. 2 Ad. & El. 395; 3 B. & C. 38; 5 B. & Ald. 339; Broom's Legal Maxims 367.

An agent cannot sell, in payment of his own debt. 7 N. H. Rep. 446.

If the plaintiff had either the general or special property, and a right of possession, he can maintain this action. 1 Camp. 369; 2 Barn. & Ald. 277; 2 Bing. 260; 1 B. & P. 47; 2 Saund. 47, d.

The property, not being in the possession of Balch, no removal was required. 2 Vt. 274.

There was a sufficient delivery. 1 New Rep. 69.

The questions to the witness were material. 1 Greenl. Ev. 491, sec. 449; 7 C. & P. 789.

The deposition of E. P. Tibbetts sufficiently refers to the matter in controversy, notwithstanding the mistake in the date.

It was not denied at the trial that Lovering was dead. The evidence of the justice respecting what Lovering testified on the trial before him was sufficiently specific. 1 Greenl. Ev. 196–7; Best on Presumptions 68; 1 D. & E. 503; 15 Wend. 193; 11 N. H. Rep. 112, *Haven* v. *Wendell.*

PARKER, C. J.  The case finds that the evidence tended to prove that Balch, who was formerly the owner of the table in question, being indebted to Richard Tibbetts and being pressed for payment, proposed "to turn out" to him this table and other furniture; that Richard Tibbetts declined to receive the articles; that the plaintiff thereupon agreed to take the property, and to guarantee the payment of the note by the first of June, then next, if Balch failed

to pay it, in which case the furniture was to be his; that the property was there at the time, and that the plaintiff moved one of the tables nearer to the other.

Assuming that the agreement was thus made, the defendant cannot object that the agreement was not binding between the parties to it, because of the statute of frauds. If it were so as between the parties, it was upon a sufficient consideration, and was not void nor voidable at the election of a third person, who was a stranger to it. The plaintiff was not bound to take advantage of the statute. But the agreement does not appear from the case to have been within the statute. It is not stated in terms with whom the contract was made, but it must be understood that it was made with Balch, the debtor, for a part of it was that if the money was not paid by Balch at the time specified, the furniture was to be the plaintiff's, to sell and dispose of as he pleased, and no one but Balch could make that agreement; and the plaintiff might, without any writing, upon a good consideration, make a valid agreement with Balch to pay his debt. Whether Richard Tibbetts could or could not enforce the guaranty is not material. Balch might enforce the promise to him.

We are of opinion that there was a sufficient delivery and possession to perfect the pledge, if it be regarded as such. The plaintiff agreed to take the property, the articles were present and under his control, and he had manual possession of one of them. This was a sufficient possession, without any formal delivery. And it seems that no act of possession was necessary to invest the party with possession, if there was a present transfer, and the property under his control. So far as appears, this possession of the plaintiff was continued. When he went away he does not appear to have abandoned the possession. If any charge for storage was proper, it might, after that, have been made against him. The property was not left

in the possession of Balch, and if it had been it would have made no difference in favor of the defendant, who is not a creditor of Balch, and does not claim under any title from him. He is not entitled, therefore, to object that the plaintiff's actual possession was not continued. As to him a constructive possession is sufficient.

It appears that prior to this transaction, Daniel Aldrich and the defendant were each authorized by Balch to sell the table; but when Aldrich sold to the defendant he did not act under this agency, nor did the defendant, when he sold it to Tirrell, act under the authority which he had possessed as agent of Balch. Neither of them, in those transactions, understood that Balch had any title. Aldrich sold it to the defendant under an alleged authority from Richard Tibbetts, who, it is found, had no right. The defendant subsequently sold it as owner, by virtue of his purchase from Aldrich. The defendant stands as a purchaser from a person who had no title nor any authority to sell, and he obtained no title by his purchase. The defendant's objection, therefore, that the plaintiff did not pay the debt of Balch until after the conversion by the defendant, cannot avail. Whether the plaintiff performed his contract of guaranty at the time or not, is a matter which does not affect the defendant's rights. He has no concern with it. Balch does not object that the plaintiff did not perform his promise, nor that he is not entitled to hold the table by virtue of the agreement between them. Whether, therefore, the original transaction be regarded as a pledge, or as a transfer of the title to the plaintiff, subject to be divested by a payment of the debt by Balch, and whether the conversion by the defendant be regarded as having taken place when he purchased and sold the table, or when, upon the demand, he neglected to deliver it to the plaintiff, the action is well maintained on the evidence. The defendant had notice of the

claim when he purchased, and trusted to Aldrich's representations, instead of inquiring farther.

The plaintiff might cross-examine the defendant's witness respecting matters material to the case, and contradict his testimony; but it is well settled that he cannot contradict his cross-examination in regard to matters which are not material. It does not appear that what Aldrich said on his cross-examination respecting his fees was material to the issue.

If the testimony of E. P. Tibbetts related to another transaction which occurred ten years previously, it could not be considered in this case. But if the witness made a mistake in regard to the date, or the magistrate who took the deposition made a mistake in recording the testimony of the witness, that would be no ground for excluding the testimony. The facts stated might lead the court to believe, and might satisfy the jury, that the testimony related to this case, and that there was a mere mistake, either of the witness or the magistrate, in relation to the date. The instruction on that point was correct.

But the testimony of the justice before whom the case was originally tried was not competent. There was not sufficient evidence of the death of the witness, Lovering. It was merely that the witness understood that he was dead. But what is probably more important, in regard to another trial, is the fact that the witness had no sufficient recollection of the testimony of Lovering on the trial before him, and could not state that his minutes contained the substance of the whole of his testimony.

*Verdict set aside.*